IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Margie Crosby Benton, | ) | C/A No. 0:09-892-HFF-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Margie Crosby Benton ("Benton"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On May 19, 2004, Benton applied for SSI and DIB. Benton's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on November 22, 2005 at which Benton appeared and testified and was represented by Michelle Suggs, Esquire. The ALJ, after hearing the testimony of a vocational expert, issued a decision dated April 25, 2007 finding that Benton was not disabled.

Benton was fifty-two years old at the time of the ALJ's decision. She has a seventh grade education and has past relevant work experience as a construction laborer and landscape laborer. Benton alleges disability since February 18, 2004,[1] the date that magnetic resonance imaging

---

[1]Benton initially alleged an onset date of November 13, 2003. However prior to the hearing before the ALJ, Benton's attorney amended the date to February 18, 2004.

("MRI") of her lumbar spine allegedly showed moderate to severe neural foraminal stenosis. (Tr. 191.)

The ALJ made the following findings and conclusions:

1.    The claimant met the insured status requirements of the Social Security Act through June 30, 2004.

2.    The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

\* \* \*

3.    The claimant has the following severe impairments: neck and back pain, headaches, and shortness of breath (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5.    After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work. She can lift up to 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and/or walk for 6 hours each in a normal 8-hour work day. She can occasionally push/pull with her lower extremities and she can occasionally climb, balance, stoop, kneel, crouch, crawl, and reach overhead. Due to back and neck pain, she should not climb ladders, scaffolds, or ropes. She should avoid concentrated exposure to fumes. Due to pain and her marginal education, the claimant is limited to simple, 1-2 step tasks.

\* \* \*

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7.    The claimant was born on March 2, 1955 and was 49 years old on the alleged disability onset date, which is defined as a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.    The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

*PJG*

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

*   *   *

11.   The claimant has not been under a "disability," as defined in the Social Security Act, February 18, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-28.)

Benton filed an appeal and submitted new evidence for consideration. The Appeals Council admitted some, but not all, of the new evidence into the administrative record. (Tr. 9.) On March 11, 2009, the Appeals Council denied Benton's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 5-8.) Benton filed this action on April 6, 2009.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   whether the claimant has a "severe" impairment;

(3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)   whether the claimant can perform her past relevant work; and

(5)      whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

PJG

than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

**ISSUE**

Benton raises the following issues for this judicial review:

I.      The Appeals Council Committed Reversible Error By Failing to Remand the Case for Consideration of the Opinion of Treating Physician Peter Carnohan, M.D. Which Was Submitted at the Appeals Council Level.

II.     The ALJ Committed Reversible Error by Failing to Obtain a Consultative Examination to Assess Depression.

(Pl.'s Br. at 9, 15, Docket Entry 15.) With regard to these issues, Benton is seeking a remand on this matter pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3). Additionally, based on a request for the ALJ to consider new evidence, Benton has moved for a remand of this matter pursuant to sentence six of § 405(g). (Docket Entry 19.)

**DISCUSSION**

**A.      New Evidence**

In conjunction with filing her reply brief, Benton filed a motion to remand this matter pursuant to sentence six of 42 U.S.C. § 405(g) for the Commissioner to consider evidence that she asserts is new and material. Specifically, Benton has submitted medical records of Dr. Peter Carnohan dated February 16, 2006 through March 12, 2007 and consisting of ten pages. (Docket Entry 19-3.) Benton argues that good cause exists for the consideration of these records.

The court may remand a case under sentence six of 42 U.S.C. § 405(g) "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." "Sentence-six remands may be ordered in only two situations: where the [Commissioner] requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." Shalala v. Schaefer, 509 U.S. 292, 297 n.2 (1993) (citations omitted). In applying sentence six, the United States Court of Appeals for the Fourth Circuit has held that a court may remand the case if the following four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at least a general showing of the nature of the new evidence to the reviewing court. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985); see also 42 U.S.C. § 405(g). The Commissioner argues that Benton has failed to demonstrate good cause for the remand or that the Commissioner's decision might reasonably have been different if he had considered the treatment notes.

Based on an affidavit attached to the motion for remand, Benton argues that good cause exists because due to what counsel for Benton refers to as a "clerical error," counsel was unaware of the existence of the records until after the commencement of judicial review by this court. Counsel attests that this case was originally handled by a former associate attorney with his firm. The associate represented Benton before the ALJ and filed the request for Appeals Council review. Based on a review of his file, counsel avers that the associate sent Dr. Carnohan a Treating Physician's Statement form and a request for medical records in May 2007. Counsel states that the

PJG

medical records were received in his office on May 28, 2007 and the completed Treating Physician's form was received on July 16, 2007. The associate left the firm in July 2007 and counsel assumed responsibility for the case. In January 2009, counsel submitted legal argument and additional evidence to the Appeals Council.[2] Counsel attests that he discovered the treatment notes in October 2009, while preparing Benton's initial brief in this matter. Counsel further avers that if he had been aware that he possessed these treatment notes, he would have submitted them to the Appeals Council.

The court finds that this is insufficient to demonstrate good cause for purposes of a remand under sentence six.[3] See Taylor v. Comm'r of Soc. Sec., 43 Fed. Appx. 941, 943 (6th Cir. 2002) (unpublished) (observing the absence of statutory or decisional authority for alleged attorney error to constitute "good cause"); O'Bert v. Comm'r of Soc. Sec., No. 1:08-cv-660, 2009 WL 3010846, *8 (S.D. Ohio Sept. 21, 2009) (unpublished) ("An allegation of attorney error has not been found to constitute good cause for purposes of a Sentence Six remand."); Jackson v. Comm'r of Soc. Sec., No. 07-14184, 2009 WL 612343, *3 (E.D. Mich. Mar. 6, 2009) (unpublished) ("Mistakes by an attorney are not considered to be 'good cause' for purposes of a remand under Sentence Six.").

---

[2] The additional evidence submitted to the Appeals Council contained Dr. Carnohan's completed Treating Physician's Statement; however, it did not contain the treatment notes.

[3] While the Commissioner also argues that this additional evidence is not material, the court does not find that argument persuasive as the Appeals Council explicitly rejected Dr. Carnohan's opinion in part due to the fact that "Dr. Carnohan provided no treatment records or physical exams to support his opinion." (Tr. 6.)

PJG

**B.    Dr. Peter Carnohan's Treating Physician Statement[4]**

As an initial matter, the parties frame the first issue before the court differently.  Benton argues that the Appeals Council erred in failing to remand this matter for consideration of Dr. Carnohan's treating physician statement, which the Appeals Council admitted into the administrative record.  The Commissioner alleges that "the pertinent issue before the Court is not whether the Appeals Council properly denied review, but whether the ALJ's decision is supported by substantial evidence when the evidence submitted to the Appeals Council is considered."  (Def.'s Br. at 11, Docket Entry 16.)  While the final decision for the purposes of this review is the decision of the ALJ, 20 C.F.R. § 404.981, the findings of the Appeals Council are pertinent in determining the weight the Commissioner attributed to the new evidence.  See  Harmon v. Apfel, 103 F. Supp. 2d 869 (D.S.C. 2000) (declining to follow the unpublished Fourth Circuit opinions and stating that "the Appeals Council must articulate its reason for rejecting new, additional evidence, so that a reviewing court may understand the weight the Commissioner attributed to the new evidence"); Suber v. Comm'r of the Soc. Sec. Admin., 640 F. Supp. 2d 684 (D.S.C. 2009) (Floyd, J.) (agreeing with and following the reasoning and holding in Harmon); Wheelock v. Astrue, No. 9:07-3786-HMH-BM, 2009 WL 250031 (D.S.C. Feb. 3, 2009) (remanding the case to the ALJ "to articulate his assessment of the new and material evidence presented by Wheelock so that this court may determine whether the ALJ's decision is supported by substantial evidence").  Accordingly, regardless of the framing of the issue, the court finds for the reasons discussed below that upon consideration of Dr. Carnohan's

---

[4] "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence."  Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972); see also 42 U.S.C. § 405(g).  Dr. Carnohan's treatment notes are not part of the administrative record; therefore, to the extent that Benton argues that Commissioner's decision is not supported by substantial evidence based on these records, this argument is without merit.

PJG

opinion, Benton has failed to demonstrate that the Commissioner's decision is not supported by

substantial evidence.

As noted above, following the ALJ's decision on April 25, 2007, Benton submitted additional

evidence to the Appeals Council consisting of the following:

1.    Medical Report from Family Health Centers, Inc. dated April 24, 2007;
2.    Referral Form from Samaritan House dated April 24, 2007;
3.    Treating Physician Statement from Peter Carnohan, MD dated July 16, 2007;
4.    Letter from the claimant dated May 21, 2007; and
5.    Counsel's Brief dated January 12, 2009.[5]

(Tr. 9, 267-91.)  Evidence submitted to the Appeals Council with the request for review must be

considered in deciding whether to grant review " 'if the additional evidence is (a) new, (b) material,

and (c) relates to the period on or before the date of the ALJ's decision.' "  Wilkins, 953 F.2d at

95-96 (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)).  Evidence is new "if it is

not duplicative or cumulative."  Id. at 96.  "Evidence is material if there is a reasonable possibility

that the new evidence would have changed the outcome."  Id.  When a claimant seeks to present new

evidence to the Appeals Council, she is not required to show good cause for failing to present the

evidence earlier.  Id. at 96 n.3; cf. 20 C.F.R. § 404.970(b).

The Appeals Council expressly considered the above-described evidence and incorporated

it into the administrative record.  After considering this evidence, the Appeals Council denied

Benton's request for review; therefore, the ALJ's decision became the final decision of the

Commissioner.  Id.  Accordingly, the court must "review the record as a whole, including the new

---

[5] It appears that counsel also submitted medical reports dated December 13, 2007 through
January 16, 2008; however, the Appeals Council determined that this information did not relate to
the period on or before the ALJ's decision and therefore did not consider it or make it part of the
record.  (Tr. 6); see also Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th
Cir. 1991) (en banc) (stating that evidence submitted to the Appeals Council with the request for
review must be considered in deciding whether to grant review if it relates to the period on or before
the date of the ALJ's decision).  Benton did not appeal this aspect of the Appeals Council's decision.

PJG

evidence, in order to determine whether substantial evidence support[ed] the [Commissioner's] findings." Wilkins, 953 F.2d at 96.

### 1.    Summary of Dr. Carnohan's Statement

Dr. Carnohan began treating Benton three months after the hearing before the ALJ and fourteen months before the ALJ's decision. (Tr. 277.) Dr. Carnohan's statement indicates that he had reviewed his notes and Benton's cervical and lumbar MRIs and that Benton's diagnoses included "chronic lumbago secondary to degenerative disc disease of the spine with radiculopathy and cervicalgia secondary to radiculopathy and degenerative disc disease."[6] (Pl.'s Br. at 7, Docket Entry 15; see also Tr. 276-83; Def.'s Br. at 8, Docket Entry 16.) Notably, Dr. Carnohan indicated that Benton's maximum exertional ability was "Sedentary - Sitting for 6 hours out of 8-hour day; stand and/or walk 2 hours out of 8-hour day; occasionally lift/carry up to 10 pounds; frequently lift/carry small articles less than 10 pounds." (Tr. 280.) He further indicated that Benton would require frequent and/or unscheduled breaks, requiring Benton to leave her workstation every one to two hours. (Tr. 281.) Dr. Carnohan stated that Benton's ability to concentrate, remain alert, think clearly, or otherwise attend to work tasks to completion during an eight-hour workday would be significantly limited by her pain or other discomfort and as a side effect of her medication. (Tr. 282.) Finally, he indicted that Benton could not sustain full or part-time work at any exertional level and that no significant improvement was expected. (Tr. 283.)

### 2.    Discussion

The parties do not appear to dispute that Dr. Carnohan was Benton's treating physician. Typically, the Social Security Administration accords greater weight to the opinion of treating

---

[6] Benton concedes that Dr. Carnohan's opinion does not indicate that Benton meets the criteria of Listing 1.04A.

*PJG*

medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight."  Id.; cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not *require* that the testimony be given controlling weight.") (emphasis added).  If controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

The ALJ noted in his opinion that "[n]o treating physician has opined that the claimant is disabled due to her alleged impairments and no work-related restrictions have been placed on her." (Tr. 27.)  The Appeals Council expressly considered Dr. Carnohan's opinion and found that it did not provide a basis for changing the ALJ's decision because (1) the ALJ had considered the February 2004 MRIs of the cervical and lumbar spines in reaching his decision; (2) Dr. Carnohan provided no treatment records or physical exams to support his opinion; and (3) the medical record consistently documented through May 2005 that Benton had 5 out of 5 motor strength in her

extremities and normal sensation, gait, and reflexes. (Tr. 6.) Implicitly, the Appeals Council determined that there was no reasonable possibility that Dr. Carnohan's opinion would change the ALJ's decision, as it found that Dr. Carnohan's opinion was not entitled to controlling weight because it was neither supported by medical evidence nor consistent with the remainder of the record.

On appeal, Benton attacks each of the reasons provided by the Appeals Council in rejecting Dr. Carnohan's opinion, arguing that each reason constitutes either reversible error or is an insufficient reason to deny review. Further, Benton argues that Dr. Carnohan's opinion is the only opinion provided by a treating physician, and that the ALJ did not have the benefit of evaluating it. In determining whether the Commissioner's decision is supported by substantial evidence, the court will address each of these arguments in turn.

The Appeals Council, in determining that Dr. Carnohan's opinion would not change the ALJ's decision, first stated that the ALJ had considered the February 2004 MRIs of the cervical and lumbar spines in reaching his decision. Benton argues that this constitutes reversible error because the ALJ is not qualified "to assess the medical significance of these technical diagnostic studies without obtaining the testimony of a medical expert or medical consultant." (Pl.'s Br. at 11, Docket Entry 15.) The court generally agrees with premise behind Benton's argument. See, e.g., Murphy v. Astrue, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."); Boiles v. Barnhart, 395 F.3d 421, 425 (7th Cir. 2005) ("An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) ("[A]n ALJ, as a lay person, is not qualified to interpret raw data in a medical record."); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) ("By

*PJG*

independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."). However, in this case, contrary to Benton's assertion, it does not appear that the ALJ interpreted the MRIs without expert medical evidence. In his opinion, the ALJ generally described some of the MRIs' findings based on radiologists' reports. (See Tr. 26, see also Tr. 165, 190,191.) Additionally, the ALJ discussed the clinical findings from physicians' examinations prior to and after the MRIs. (Tr. 26-27; see also Ex 4F, Tr. 166-205; Ex. 5F, Tr. 206-224; Ex 9F, Tr. 246-57.) Moreover, the ALJ considered the functional limitations indicated by the State agency physicians, who are considered experts, that reviewed the 2004 MRIs as part of their record review. (Tr. 27; see also Ex. 6F, Tr. 225-32; Ex. 7F, Tr. 233-40.)

Second, the Appeals Council found that Dr. Carnohan's opinion did not warrant changing the ALJ's decision because no treatment records or physical exams from Dr. Carnohan were provided to support his opinion. As stated above, a treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). It this case, it is undisputed that the Appeals Council was only provided with Dr. Carnohan's treating physician statement and that Benton failed to include any of Dr. Carnohan's treatment notes.[7] The Appeals Council did not err in failing to give Dr. Carnohan's opinion controlling weight, as it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Id. Although "[i]n many cases, a treating source's medical

---

[7] To the extent that Benton contends that counsel has recently discovered these records in his possession and argues that this matter should be remanded for consideration of these records, for the reasons stated above, these records are not properly before the court and a remand is not proper pursuant to sentence six of § 405(g).

PJG

opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test

for controlling weight," SSR 96-2p, as discussed above, there are several criteria that should be

considered when determining how much weight to give to a treating physician's opinion in such

circumstances, one of which is the extent to which it is supported. See Johnson, 434 F.3d at 654.

The Appeals Council appears to have considered these factors and determined that Dr. Carnohan's

opinion was not entitled to great weight because it was not supported by medical evidence and would

therefore not change the ALJ's decision.

This court may not substitute its judgment for that of the Commissioner where its decision

is supported by substantial evidence and not contrary to controlling legal principles. Viewing the

record as it exists, the court finds that even with Dr. Carnohan's opinion, the ALJ's decision is

supported by substantial evidence, as Dr. Carnohan's opinion is not supported by clinical evidence.[8]

See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (stating that "if a physician's opinion is not

supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be

accorded significantly less weight").

Finally, Benton argues that the Appeals Council's statement that the medical record

consistently documented through May 2005 that Benton had 5 out of 5 motor strength in her

extremities and normal sensation, gait, and reflexes does not contradict Dr. Carnohan's opinion and

therefore, is not a basis for rejecting it. This factor, however, was only one of several factors relied

upon by the ALJ in finding that Benton was not disabled. For example, the ALJ explicitly

---

[8] To the extent that Benton alleges that the Appeals Council should have sought to obtain these records, such argument is without merit, especially in light of the fact that Benton bears the burden to prove she is disabled and that she was represented by counsel at all times during this proceeding. Compare 42 U.S.C. § 423(d)(5)(B) ("In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination.").

considered Benton's activities of daily living, the fact that Benton was using over-the-counter

medication for pain, and Benton's treatment history.[9] (Tr. 24-26); see Craig v. Chater, 76 F.3d 585

(4th Cir. 1996) (providing the two-step process for determining whether a person is disabled by pain

or other symptoms); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence

of ongoing medical treatment can discredit a claimant's allegations); Gross v. Heckler, 785 F.2d

1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication

or treatment, it is not disabling"). Accordingly, the court finds that for all of the above discussed

reasons, the decision of the Commissioner is supported by substantial evidence.

## C.     Consultation Examination

Benton next argues that the ALJ erred in failing to obtain a consultation examination to

assess Benton's allegations of depression. "A consultative examination *may* be purchased when the

evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your

claim." 20 C.F.R. § 404-1519a(b). This decision is within the discretion of the ALJ. Singleton v.

Barnhart, 399 F. Supp. 2d 686, 690 (D.S.C. 2005); Bishop v. Barnhart, 78 Fed. Appx. 265, 268 (4th

Cir. 2003) (unpublished). Further, the plaintiff must point to some record evidence suggesting the

existence of a condition that could have a material impact on the disability decision before the ALJ

---

[9] In Benton's reply brief, she also argues that the ALJ erred in discounting her subjective complaints of pain based on an incorrect statement that Benton continued working after her alleged onset date based on a note in Benton's medical records. Benton submitted a letter to the Appeals Council, which was admitted into the administrative record, in attempt to clarify this statement. (Tr. 285.) In light of all the evidence in the record, Benton has failed to establish that this error affected the outcome of the case or changed the substance of the decision in any manner, rendering this error harmless. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted); see also Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).

has a duty to order a consultative examination. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists" before it "becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment"). In matters involving a mental impairment, 42 U.S.C. § 421(h) provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security had made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

In this case, the record reveals that Benton exhibited symptoms of major depression and possible chronic depression in September 2004. (Tr. 169-72). After being prescribed an anti-depressant, she reported improvement in December 2004. (Tr. 166-68.) The record is devoid of any other medical evidence concerning depression, which Benton acknowledged at the hearing. (Tr. 311-12.) Moreover, the ALJ fully considered Benton's daily activities; her ability to function socially; her concentration, persistence, and pace; and the existence of deterioration or decompensation. (Tr. 22.) On the basis of the evidence in the record, the court finds that the ALJ did not err in declining to order a psychological consultative examination.

## RECOMMENDATION

For the foregoing reasons, the court finds that Benton has failed to demonstrate good cause for purposes of a remand under sentence six.  Further, the court finds that Benton has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_Paige J. Gossett_
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 28, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).